UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM MEYER,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-822
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 17), the Commissioner's response in opposition (Doc. 20), and plaintiff's reply memorandum. (Doc. 23).

**I. Procedural Background**

Plaintiff filed an application for DIB in March 2009, alleging disability since February 26, 2008, due to rheumatoid arthritis (RA), a total right hip replacement, and osteonecrosis of his left hip. (Tr. 225). Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Samuel A. Rodner. Plaintiff, a medical expert (ME), and a vocational expert (VE) appeared and testified at the ALJ hearing. On May 4, 2011, the ALJ issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

II. Analysis

    A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since February 26, 2008, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: right avascular necrosis, status post cord decompression of the right hip, total right hip arthroplasty, greater trochanteric bursitis of the left hip, right knee pain, status post right knee partial medial meniscectomy, left knee osteoarthritis and chrondromalacia (sic), diabetes, morbid obesity, rheumatoid arthritis, and vertigo (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: lift [ ]10 pounds occasionally and five pounds frequently, stand/walk for 2 hours out of an 8 hour workday, sit for 6 hours out of an eight hour workday, the [plaintiff] requires a stand option for 1-5 minutes every hour, capable of frequent handling and fingering, never climb ladders, ropes, or scaffolds, never crawl, crouch, or kneel, occasionally climb ramps and stairs, stoop and balance, avoid concentrated exposure to extreme cold or heat, humidity, and vibration and avoid all exposure to unprotected heights, hazardous machinery.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[1]

7. The [plaintiff] was born [in]... 1962 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date. (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from February 26, 2008, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 25-33).

C. **Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

---

[1] Plaintiff has past relevant work as a dry wall installer. (Tr. 31, 226).
[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 3,200 unskilled, sedentary jobs in the regional economy, citing as examples of such jobs a surveillance system monitor, inspector,1 and packager. (Tr. 32, 93-97).

4

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that: (1) the ALJ erred by finding that plaintiff did not meet Listing 14.09; (2) the ALJ failed to address how plaintiff's treatment regimen affects his ability to sustain competitive work; and (3) the ALJ improperly assessed plaintiff's credibility. Plaintiff's asserted errors will be addressed in turn.

1. <u>The ALJ did not err in determining that plaintiff did not meet Listing 14.09</u>.

The ALJ determined that plaintiff's rheumatoid arthritis did not meet or equal Listing 14.09, citing a lack of medical evidence that plaintiff was unable to effectively ambulate or

5

perform fine and gross motor movements with his upper extremities. (Tr. 27). Plaintiff contends that this determination should be reversed because the ALJ failed to cite to record evidence in support of his finding. Plaintiff further argues that contrary to the ALJ's finding, there is evidence demonstrating that plaintiff's arthritis causes symptoms which meet or medically equal Listing 14.09A2 such that the ALJ's finding is not substantially supported. For the reasons that follow, the undersigned finds that the ALJ's determination is supported by substantial evidence of record.

Listing 14.09 covers disorders related to inflammatory arthritis. Plaintiff asserts he meets Listing 14.09A2, which requires "[p]ersistent inflammation or persistent deformity of . . . [o]ne or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7)." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.09A2. An "[i]nability to perform fine and gross movements effectively" is defined as:

> an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

*See* 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.00B2c, 14.00C7.

A summary of the medical evidence related to plaintiff's arthritis includes treatment notes from plaintiff's rheumatologist, David Greenblatt, M.D. Dr. Greenblatt's clinical notes show that plaintiff's hands and wrists are the joints most affected by his rheumatoid arthritis. (Tr.

6

443-471, 617-631, 665-675). Plaintiff consistently complained of morning joint stiffness. (Tr. 445, 447, 450, 452, 454, 456, 458, 459, 462, 464-465, 468, 619, 621). Upon examination, Dr. Greenblatt found soft tissue swelling in his hands and wrists. *Id.* In November 2008, Dr. Greenblatt noted that plaintiff's "rheumatoid disease is stable," and plaintiff had no morning stiffness, only trace swelling in his wrist and knees, and some soft tissue swelling in his elbows. (Tr. 455-56). In April 2009, Dr. Greenblatt noted that plaintiff continued to have symptoms of rheumatoid arthritis in spite of a normal C-Reactive Protein (CRP). (Tr. 450). In June 2009, Dr. Greenblatt noted that plaintiff's "rheumatoid disease is improving" and that he was "feeling much better" with medication. Joint pain and morning stiffness had improved, his gait and posture were normal, and there was "no evidence of overt muscular wasting." (Tr. 446).

Lab testing from December 2010 shows that plaintiff's CRP was within the normal range. (Tr. 675).

A consulting chiropractor, Dr. Matthew Haumesser, reported on April 21, 2011, that plaintiff "explained to me that he has rheumatoid arthritis" and that "in [his] professional opinion that this [mild to moderate] level of osteoarthritis is in fact complicating his rheumatoid arthritis." (Tr. 718).

State agency physician Gary Hinzman, M.D., reviewed the file on June 1, 2009, and completed a physical residual functional capacity (RFC) assessment. (Tr. 487-94). He opined that plaintiff could lift and/or carry and push and/or pull up to 20 pounds occasionally and 10 pounds frequently; could stand and/or walk about two hours in an eight-hour workday; and could sit for about six hours in an eight-hour workday. (Tr. 488). Dr. Hinzman also opined that

7

plaintiff could never kneel, crouch, crawl, or climb ladders, but he could occasionally stoop and climb ramps or stairs. (Tr. 489). Dr. Hinzman also noted that plaintiff was "limited to frequent manipulation in both hands." (Tr. 490). Dr. Hinzman deemed plaintiff's allegations to be partially consistent with the medical evidence. (Tr. 492). In October 2009, nonexamining state agency physician W. Jerry McCloud, M.D., affirmed Dr. Hinzman's assessment. (Tr. 485).

Richard A. Hutson, M.D., testified as the ME at the administrative hearing. (Tr. 79-88). Based on his review of the record, Dr. Hutson testified that plaintiff has vascular necrosis in both hips, right greater than the left; rheumatoid arthritis in his wrists; and degenerative joint disease in both knees. (Tr. 79-80). Dr. Hutson testified that the record does not show that plaintiff meets or equals any listing, but he believed plaintiff could do sedentary work. (Tr. 81). According to Dr. Hutson, plaintiff is limited to standing and/or walking two hours in an eight hour day, and sitting six hours in an eight hour work day, with a sit/stand option. *Id.* Dr. Hutson described the sit/stand option as not leaving his work station; he should be permitted to stand for up to five minutes within each hour, but not necessarily consecutively. (Tr. 81-82). Dr. Hutson also limited plaintiff to frequent but not continuous use his hands for handling and fingering and only occasional postural activities such as stooping and climbing ramps or stairs; he can never climb ladders, ropes or scaffolds; plaintiff should never crouch, crawl, or kneel; and he must avoid concentrated exposure to extreme cold or heat, humidity, vibration, and unprotected heights or hazardous machinery. (Tr. 80-83).

The ALJ determined that plaintiff's rheumatoid arthritis did not meet or equal Listing 14.09A2 because of the lack of "evidence that [plaintiff] is unable to perform fine and gross motor movements effectively with his upper extremities." (Tr. 27). Plaintiff argues that

reversal is necessary because the ALJ did not cite to evidence in support of his finding and because the record evidence demonstrates that plaintiff is indeed incapable of performing fine and gross movements with his upper extremities. (Doc. 17 at 8-11). In support, plaintiff cites to his testimony and self-reports to the Social Security Administration that his hands swell when he walks and after he writes for 30 minutes and that this swelling prevents him from being able to grip objects, pick up a piece of paper, use a pen, open jars, turn round doorknobs, button buttons, hold his cane, lift his arms above his head, and manage his own grooming or put his shoes on without assistance. (Tr. 66-71, 225, 236, 239, 248, 254). Plaintiff further cites to his consistent reports to Dr. Greenblatt that he experienced morning joint stiffness and Dr. Greenblatt's observations that plaintiff had soft tissue swelling in his wrists, hands, and elbows. *See generally* Tr. 445-68, 619-69. The undersigned finds that the above-cited evidence does not require reversal of the ALJ's determination that plaintiff's rheumatoid arthritis does not meet Listing 14.09.

First, plaintiff's argument that the ALJ's finding must be reversed for failure to cite to supporting evidence ignores the basis for the ALJ's finding – that there was no such evidence. It is illogical to require that the ALJ cite to evidence that does not exist. In any event, there is no evidence that any of plaintiff's treating physicians reported an inability to effectively perform fine and gross motor movements. There is no error in this regard.

Second, to the extent that plaintiff asserts the ALJ erred because plaintiff's testimony and subjective reports are evidence of extreme functionality loss sufficient to support a finding that he meets or medically equals Listing 14.09A2, plaintiff's argument is not well-taken. Plaintiff has the burden of bringing forth evidence establishing that he meets the criteria of the Listing.

9

*Evans v. Sec'y of H.H.S.*, 820 F.2d 161, 164 (6th Cir. 1986) (per curiam). Plaintiff cannot meet this burden by relying solely on his subjective reports of disabling symptoms – there must be objective medical evidence establishing his disability. *See Cohen v. Sec'y of H.H.S.*, 964 F.2d 524, 529 (6th Cir. 1992).

Here, plaintiff relies almost entirely on his own testimony and self-reports of disabling symptoms to establish that he meets Listing 14.09A2. The ALJ, however, determined that plaintiff's testimony in this regard was not credible. *See* Tr. 30. As discussed further, *infra*, the undersigned finds that the ALJ's credibility determination is substantially supported as the weight of the evidence does not support a finding that plaintiff suffers from disabling rheumatoid arthritis. Dr. Greenblatt's notes reflect only "1+ soft tissue swelling" in plaintiff's upper extremities and there is no observation of functional loss. Dr. Greenblatt described plaintiff's rheumatoid arthritis as "stable" and "improving" (Tr. 446, 455) and objective testing showed that plaintiff had normal CRP. (Tr. 450, 675). The only medical opinions in the record are the ME's testimony that plaintiff is capable of sedentary work with frequent, but not continual, fingering and manipulation (Tr. 81-83) and the state agency reviewing physicians' opinions that plaintiff is capable of light work with frequent fingering. (Tr. 485, 488-90). It was reasonable for the ALJ to consider this objective and clinical evidence and determine that it does not support a finding that plaintiff suffers from extreme functional loss of his upper extremities. The undersigned therefore finds that plaintiff failed to meet his burden of establishing that he meets or medically equals Listing 14.09A2 and that the ALJ's determination is substantially supported.

Third, plaintiff's contention that the ALJ erred by relying on his discussion of plaintiff's activities of daily living in assessing whether he met or medically equaled Listing 14.09 lacks

merit. In his discussion, the ALJ noted that plaintiff "does not exhibit marked limitations in daily living, social functioning, or in maintaining concentration, persistence, and pace, as discussed with respect to [plaintiff]'s nonsevere mental impairments." (Tr. 27). Plaintiff argues that the ALJ committed an error of law by citing to this evidence to support his Listings finding as to plaintiff's physical condition. Plaintiff's argument is premised upon the erroneous supposition that the ALJ may only consider discrete portions of the record evidence in making his findings as to plaintiff's physical, as opposed to his mental, impairments. Plaintiff cites to no authority nor is the Court aware of any that prohibits the ALJ from considering plaintiff's activities of daily living, as discussed in connection with his mental impairments, when determining if he meets a Listing for a physical impairment. Rather, the opposite is true, as the ALJ is to consider the entire case record in making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3). Moreover, Listing 14.09A2 itself references a claimant's ability "to carry out activities of daily living" in determining whether the claimant has the ability to use his upper extremities effectively. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.00B2c, 14.00C7. The undersigned thus finds that the ALJ did not err by citing to plaintiff's activities of daily living in explaining his finding that plaintiff did not meet or medically equal Listing 14.09.

For the above reasons, plaintiff's first assignment of error should be overruled.

2. <u>The frequency of plaintiff's doctor's appointments do not preclude employment</u>.

For his second assignment of error, plaintiff argues that the ALJ erred by failing to account for plaintiff's treatment regimen in finding that he was capable of engaging in full-time substantial gainful activity. (Doc. 17 at 11-12). Plaintiff argues that the record demonstrates that he has at least four doctor appointments every month (Tr. 269-71) and, consequently, he will

11

be required to miss four days of work monthly. As the VE testified that an employee who misses this much work would not be able to sustain full time employment (Tr. 95-96), plaintiff asserts the ALJ erred in finding that he is capable of performing substantial gainful activity.

Plaintiff's argument lacks support as he has failed to present any evidence demonstrating that he *must* miss four days of work each month to attend doctor's appointments. Common sense dictates that not only is it possible for plaintiff to schedule his doctor's appointments such that they occur on one day a month or on non-workdays, it is also highly unlikely that plaintiff would be need to miss an entire workday to attend a doctor's appointment. Given the complete lack of evidence that plaintiff must miss work four whole days a month to attend doctor's appointments, his second assignment of error should be overruled.

3. <u>The ALJ did not err in discounting plaintiff's credibility</u>.

For his third and final assignment of error, plaintiff contends the ALJ erred in assessing his credibility. Plaintiff asserts the ALJ improperly relied on the fact that plaintiff had not sought additional vocational training or lost weight in finding him to be less than fully credible. Plaintiff further asserts that the ALJ erroneously characterized plaintiff's activities of daily living in making his credibility finding. Plaintiff therefore contends that the ALJ's credibility finding is without substantial support and that the matter should be remanded for re-evaluation of his credibility. (Doc. 17 at 12-15).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers*, 486 F.3d at 247 (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*,

246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers,* 486 F.3d at 247. Rather, such determination must find support in the record. *Id.* Whenever a claimant's complaints regarding symptoms or their intensity and persistence are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." *Id.* Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

Substantial evidence supports the ALJ's determination that plaintiff's subjective statements regarding the severity of his impairments are not credible to the extent they are inconsistent with his finding that he is capable of performing a limited range of sedentary work. The ALJ determined that plaintiff was partially, but not fully credible, noting that plaintiff's strong work history and desire to return to work weighed in his favor. However, the ALJ identified several bases for discounting plaintiff's credibility. (Tr. 30-31).

First, as plaintiff notes, the ALJ found that plaintiff's failure to obtain vocational training which would assist him in finding work within his physical limitations weighed against his credibility. (Tr. 30). Plaintiff argues that the ALJ erred in this regard because this ignores the severe fatigue plaintiff experiences due to his arthritis and medications, as well as plaintiff's difficulty sitting for an extended period of time, which cannot be accommodated even with a sit-stand option. (Doc. 17 at 13). In support, plaintiff cites to various treatment records from Dr. Greenblatt (Tr. 443-71, 617-31, 665-75); however, it is unclear how these treatment notes support plaintiff's assertion as they do not reflect an individual with disabling arthritis. The notes include Dr. Greenblatt's description of plaintiff's rheumatoid arthritis as "active," "slightly active," "improved," and "stable" (Tr. 444, 446, 451, 453, 455, 457, 459, 461, 463, 467, 618, 620, 622, 624, 626, 628, 630, 668); plaintiff's subjective complaints of stiffness in the morning for thirty minutes to two hours or none at all (Tr. 444, 451, 455, 618, 620, 624, 626, 628, 668); reports that he is "feeling much better" and "feeling a little better" (Tr. 446, 450); and reports of minimal to no side effects from medication. (Tr. 444, 453, 455, 461, 463, 467). There is nothing in this evidence establishing that plaintiff is incapable of obtaining additional vocational training for sedentary work such that the ALJ's determination must be reversed. Indeed, the notes from Dr. Greenblatt reflect only that plaintiff was engaged in ongoing treatment for his arthritis which appears to have been manageable aside from some morning stiffness and discomfort. As there is nothing in these record from which the undersigned can discern that the ALJ erred in discounting plaintiff's credibility due to his failure to obtain vocational training, plaintiff's argument in this regard is not well-taken.

Second, the ALJ found that plaintiff was not fully credible as: (1) there was no medical support for his claim that he required a walking aid, aside from the convalescence period following surgeries; (2) the medical records did not support his statements of experiencing severe side effects from medication; (3) plaintiff made inconsistent statements as to his smoking; and (4) there was no evidence that plaintiff made a sustained attempt to lose weight despite being advised that this would significantly improve his diabetes. (Tr. 30). Plaintiff argues that the ALJ erred in these findings as his ability to lose weight should not be used to discount his credibility pursuant to Social Security Ruling 02-1p. Further, plaintiff asserts that the lack of medical documentation of plaintiff's cane use is an insufficient reason for finding him less than fully credible, citing to *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009). Plaintiff's arguments are not persuasive.

As to plaintiff's weight loss, Social Security Ruling 02-1p provides guidance on how obesity should be evaluated in the context of a disability claim.[3] The Ruling provides that obesity treatments are often unsuccessful and that weight is often regained despite an individual's efforts to maintain weight loss and that a treating source's statement that a patient should lose weight is not prescribed treatment. SSR 02-1p, 2000 WL 628049 (Sept. 12, 2002). However, it does not prohibit an ALJ from considering as one factor in the credibility analysis whether plaintiff's lack of effort to lose weight despite his doctor's advice that it would assist his diabetes negatively affects his credibility. As the evidence demonstrates that plaintiff was informed that he would likely no longer have to take Metformin to treat his diabetes with some weight loss (Tr.

---

[3] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson*, 378 F.3d at 549, the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social

15

585) and that plaintiff did not appear to engage in any effort to lose weight, the ALJ's consideration of this in weighing plaintiff's credibility is not reversible error.

Even assuming, *arguendo*, the ALJ erred in considering plaintiff's failure to lose weight in assessing his credibility, any error is harmless as the ALJ's credibility determination is otherwise supported by substantial evidence. For example, the ALJ noted that plaintiff reported during a March 2010 emergency room visit that he was a non-smoker, but "the record is replete with evidence of [plaintiff]'s smoking habit. . . ." (Tr. 30, citing 503-90, 651). Review of the record supports the ALJ's determination and plaintiff presents no argument to the contrary. Likewise, as discussed above, Dr. Greenblatt's treatment notes reflect that plaintiff reported only minimal, if any, side effects from medication; thus, the ALJ's finding in this regard is substantially supported. *See, generally*, Tr. 443-71, 617-31. To the extent plaintiff contends that the lack of medical evidence supporting his need for a cane is not a basis for discounting his credibility, plaintiff's reliance on *White* is misplaced. In *White*, the Sixth Circuit found that the ALJ's credibility finding, based in part on the lack of a prescription for a cane, was without substantial support because the ALJ did not address plaintiff's testimony that he had obtained a cane without a prescription. *White*, 312 F. App'x at 789. Here, however, the ALJ noted that plaintiff had obtained a cane without a prescription and based his credibility finding not on the lack of prescription for a cane, but rather on the lack of any medical evidence that plaintiff required an ambulatory aid. (Tr. 30). The record evidence substantially supports this finding as Dr. Greenblatt's notes consistently reflect that plaintiff had a normal gait and made no mention of the need for an ambulatory aid. *See* Tr. 444, 446, 451, 453, 455, 457, 459, 461, 463, 465,

---

Security Regulations, but *assumed* that they are. [The Court] makes the same assumption in this case." *Ferguson v. Comm'r of Soc. Sec.*, 627 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis in original).

467, 619, 620, 623, 624, 626, 628, 631. The ALJ did not err in discounting plaintiff's credibility on these grounds.

Third, the ALJ found that plaintiff's activities of daily living were inconsistent with a finding of disability. The ALJ noted that plaintiff injured his back while picking up furniture while helping his daughter move and that he was able to engage in household chores, shop, and go on vacation, and that these activities indicated that plaintiff is less limited than he alleges. (Tr. 30-31). Plaintiff argues that the ALJ unfairly characterized this evidence in discounting his credibility as the record demonstrates that plaintiff injured himself in his attempt to help his daughter move by lifting a nightstand and that this minimal activity caused him severe pain and required medical attention. (Doc. 17 at 14, citing Tr. 501). Plaintiff further argues that the mere mention of plaintiff's intent to travel to Niagara Falls in a treatment note does not support a finding that plaintiff indeed went on the trip or that he did not require frequent breaks to stretch to address his impairments. (Doc. 17 at 14, citing Tr. 531). Lastly, plaintiff argues the ALJ's reference to his ability to do household chores does not account for the manner in which he completes them.

The undersigned agrees with plaintiff that the ALJ erred by failing to take into account the manner in which plaintiff completes household chores. The ALJ may not selectively reference a portion of the record which casts plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002). Plaintiff testified that he is able to vacuum once or twice a month but only for five minutes at a time as he requires breaks. (Tr. 60). Plaintiff also submitted a letter to the ALJ wherein he reported that when travelling on vacation he must stop hourly to stretch his legs.

17

(Tr. 272). The ALJ's cursory statement that plaintiff is "able to perform some chores" and vacation (Tr. 30) does not accurately reflect the limited manner in which plaintiff engages in these activities. Nevertheless, given the evidence discussed above that otherwise supports the ALJ's credibility determination, the undersigned finds that this error is harmless. The Court therefore recommends that plaintiff's third assignment of error be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and that this matter be closed on the docket of the Court.

Date: 12/20/13

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM MEYER,
    Plaintiff,

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:12-cv-822
Dlott, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).